Merrimack
No. 2005-176

JOHN J. GOSSELIN

v.

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS

Argued: March 9, 2006
Opinion Issued: July 19, 2006

John J. Gosselin, by brief, *pro se*, and *Theodore M. Lothstein*, assistant appellate defender, of Concord, orally, for the petitioner.

*Kelly A. Ayotte*, attorney general (*Dianne H. Martin*, attorney, on the memorandum of law, and *Andrew Livernois*, assistant attorney general, orally), for the respondent.

BRODERICK, C.J. The petitioner, John J. Gosselin, appeals the decision of the Superior Court (*Lewis*, J.) denying his petition for writ of certiorari. The New Hampshire Department of Corrections (DOC) is the respondent in this case. We affirm.

The record supports the following. Gosselin is an inmate in the New Hampshire State Prison, and was charged with disciplinary infractions seven times from May 2003 to September 2003. The DOC's Policy and Procedure Directive 5.25 (PPD 5.25) sets forth the procedures for resolving such allegations. In accordance with those procedures, Gosselin was given written notice of and received a hearing for each of the charges against him.

At each of the hearings, Gosselin entered pleas of not guilty. After reviewing the evidence, the hearings officer found Gosselin guilty of six of

the charges, and not guilty of one. Gosselin was "written-up" for the six offenses and was either sanctioned with the loss of some privilege, such as canteen, or was given various hours of extra duty. Gosselin did not receive additional prison time or lose good time credits for the violations.

Gosselin appealed at least some of the decisions, but the prison warden found no procedural error. Gosselin then filed a writ of certiorari in the superior court, and the DOC moved to dismiss. Gosselin argued that PPD 5.25 should have been promulgated under RSA chapter 541-A, the Administrative Procedures Act (APA), and that hearings conducted under PPD 5.25 are subject to the requirements of a full adjudicative hearing under RSA 541-A:31 to :36 (1997 & Supp. 2005). The DOC responded that PPD 5.25 is not governed by the APA and that Gosselin's appeal rights ended with the prison warden.

The superior court agreed with the DOC. After examining the APA and statutes governing the DOC, the court explained:

> [T]he DOC Commissioner's general authority to promulgate and maintain PPD 5.25 derives from his/her power "to establish written standards regarding the behavior and responsibilities of inmates," and to adopt "reasonable internal practices and procedures" to deal with, among other things, "procedures for the operation of the state prison . . . including provisions for the humane treatment of inmates," all by means of actions that "shall not be considered rules subject to the provisions of RSA 541-A." *See* RSA 21-H:14 and 8, III. The Court thus concludes that the Legislature has granted broad authority to the DOC commissioner, outside the confines [of] the APA, to enact and maintain PPD 5.25 to deal with failures of state prison inmates to properly behave, and to enforce inmate responsibility in that regard.

In reaching this conclusion, the superior court determined that Gosselin was not entitled to any of the relief he sought, and accordingly denied his petition for writ of certiorari. This appeal followed.

In its memorandum of law on appeal, the DOC argues that Gosselin's petition for writ of certiorari was untimely. We can find no indication in the record that this argument was raised below. Accordingly, even assuming that the petition was untimely, we consider the DOC's argument on this issue waived.

█ The test to determine whether to grant a writ of certiorari is whether the agency has acted illegally with respect to jurisdiction, authority or observance of the law, or has acted arbitrarily, unreasonably,

capriciously, or with an unsustainable exercise of discretion. *Petition of Support Enforcement Officers*, 147 N.H. 1, 4 (2001); *State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). On appeal, Gosselin argues that the trial court erred as a matter of law when it determined that PPD 5.25 and the required hearings are not governed by the strictures of the APA. We disagree.

The APA establishes the procedures by which administrative agencies promulgate rules and regulations, as well as the procedures that govern disputes arising under those rules. *See generally* RSA ch. 541-A (1997 & Supp. 2005). The "rules" to which the APA applies include

> each regulation, standard or other statement of general applicability adopted by an agency to (a) implement, interpret, or make specific a statute enforced or administered by such agency or (b) prescribe or interpret an agency policy, procedure or practice requirement binding on persons outside the agency, whether members of the general public or personnel in other agencies.

RSA 541-A:1, XV. This definition excludes certain memoranda, pamphlets, rulings, and forms, *id.*, none of which is applicable here.

The APA was subsequently amended to include a section entitled "Exemptions" that excluded certain rules and regulations, required by other statutes, from the definition of "rule" in the APA, and accordingly from the strictures required by that act. Laws 1974, 45:12. Until 1994, several other exemptions were added to that list. *E.g.*, Laws 1979, 94:1 (excluding rules "relative to bridge weight limits"); Laws 1990, 161:9 (excluding rules "relative to the Pease development authority"). Among these additional exemptions was one for rules "relative to credit for good conduct of prisoners." Laws 1982, 36:8. This exemption remains in effect, and is presently codified at RSA 541-A:21, I(j).

Additionally, RSA chapter 21-H was enacted in 1983. It requires the DOC commissioner to adopt "such reasonable internal practices and procedures ... as may be necessary to carry out the duties of the department and its divisions," as well as "written standards regarding the behavior and responsibilities of inmates." RSA 21-H:8, III, :14 (2000). It further states that such practices, procedures, and standards "shall not be considered rules subject to the provisions of RSA 541-A." RSA 21-H:8, III, :14. The DOC argues that when these sections in RSA chapter 21-H were enacted in 1983, they exempted the required practices, procedures, and standards from both the rulemaking and adjudicative hearing strictures of the APA.

However, even assuming the DOC is correct, in 1994 the legislature repealed and recodified the APA. As part of the recodification, the new APA stated, "This chapter shall govern all agency rulemaking procedures, hearings, and appeals, except as specifically exempted by this chapter. Conflicts between this chapter and prior or existing statutes shall be resolved by following the stricter requirements." RSA 541-A:41.

The DOC, after referencing this statute in its memorandum on appeal, argues, "The commissioner's existing statutory authority, and its implementation in DOC policy 5.25 ... are the 'stricter requirements' and must prevail." We disagree. This statute had the effect of repealing all exemptions not expressly contained in RSA 541-A:21, which is the recodification of the list originally established in 1974 and subsequently amended as described above. Cf. *Support Enforcement Officers*, 147 N.H. at 5.

■ Accordingly, to the extent that RSA chapter 21-H may have exempted the DOC's policies, procedures, and standards from the APA prior to 1994, we hold that it no longer does so. The issue before us, then, is whether PPD 5.25 falls within the only applicable exemption that *is* contained in the APA—namely, RSA 541-A:21, I(j), which exempts rules "relative to credit for good conduct of prisoners."

Included in the record is a document entitled "DISCIPLINARY RULE INFRACTIONS" that appears to be "Attachment 2" to PPD 5.25. It describes the kinds of infractions an inmate may be charged with, as well as the type and level of punishment that may be levied upon the inmate. The kinds of punishment include loss of good time, disciplinary segregation days, extra duty hours, and suspension of privilege days. Infractions are divided into type A, B, or C offenses, with A offenses being the most serious and C offenses the least. Although, generally, A offenses are adjudicated in "major" hearings and B or C offenses in "minor" hearings, each infraction type could result in any of the listed punishments, including loss of good time. Also, "multiple or complicated cases may be referred by the Administrator of Security to the major board even if all the offenses are B and C offenses."

Attachment 2 further explains:

> Repeat offenses increase the severity of B and C offenses so that a specific C type offense repeated within a 90 day period may become a B offense. A repeated B offense within 90 days may become an A offense. Repeat offenses may be increased in severity if the person writing the report or investigating the report identifies the earlier violation and its date from the offender's record.

The policy of allowing multiple minor infractions to result in the loss of good time credits is also allowed by the statutes. "Any serious act of misconduct or insubordination, or persistent refusal to conform to prison regulations during his confinement shall subject the prisoner to the loss of all or any portion of such [good time] credits, at the discretion of the commissioner." RSA 651-A:22, IV(b) (1996).

While we do not have documentation for all of the infractions with which Gosselin was charged, one of those in the record clearly indicates a type B offense. We recognize that Gosselin did not lose any good time credits. However, as the same set of rules governs both major and minor infractions, and where even a single violation may result in the loss of good time credits, depending upon the circumstances, the rules governing his actions could have produced such a result.

 Accordingly, we hold that PPD 5.25 falls under RSA 541-A:21, I(j) and is therefore exempt from the rulemaking and adjudicative hearing strictures of the APA. Although we come to this conclusion on different grounds than did the trial court, we nonetheless affirm its dismissal of Gosselin's petition for writ of certiorari. Due to our resolution of this issue, we need not address the other arguments on appeal.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.